MARY WHITTAKER *and* VONNIE LEE JARRETT

*v.*

B. G. PAULEY *and* MARION COUNTY BOARD OF EDUCATION

(No. 12858)

Submitted February 17, 1970.    Decided March 24, 1970.

*Furbee, Amos, Webb & Critchfield, Alfred J. Lemley, Hays Webb,* for appellant.

*Patrick Casey, John R. Mitchell,* for appellees.

CALHOUN, JUDGE:

This case involves an action for recovery of damages for personal injuries sustained by the plaintiffs as passengers in an automobile operated by Charles M. Jarrett when that vehicle collided with an automobile operated by the defendant, B. G. Pauley. The defendant has been granted an appeal from a final judgment of the Circuit Court of Marion County entered on January 10, 1969, upon a jury verdict in favor of Mary Whittaker for $118 and a verdict for $1,000 returned by the same jury in favor of Vonnie Lee Jarrett.

The case was submitted for decision in this Court on the record made in the trial court and upon a brief and oral argument of counsel for the defendant. No appearance was made in this Court by or in behalf of the plaintiffs.

By way of assignment of error, counsel for the defendant relies primarily on the grounds that the evidence was not sufficient to justify any verdict against the defendant and that the trial court erred in granting and in reading to the jury Plaintiffs' Instruction No. 8.

The accident occurred on U. S. Route 21 on January 7, 1966, at a point near New Era in Jackson County, West Virginia. Immediately before the collision, B. G. Pauley, who was then Superintendent of Schools of Marion County, was proceeding southward in an automobile alleged to have been owned by the Marion County Board of Education. The board of education was made a party defendant to the action but subsequently the trial court sustained the motion of the

board of education that it should be dismissed as a party defendant.

Passengers in the automobile operated by the defendant were his wife and their three children. Immediately before the collision, Charles M. Jarrett, husband of Vonnie Lee Jarrett, one of the plaintiffs, was proceeding northward on U. S. Route 21 in an automobile which belonged to his son. The plaintiffs are sisters. In addition to the two plaintiffs, six children were passengers in the Jarrett automobile.

B. G. Pauley, the defendant, was the first witness called to testify in behalf of the plaintiffs. Pauley, while testifying for the plaintiffs and also when testifying subsequently in his own behalf, stated that the accident occurred about 7:30 p.m. while headlights on both vehicles were turned on; that immediately before the collision he was proceeding at a speed of about twenty miles an hour; that the Jarrett vehicle "approached very fast"; that it "appeared to be coming in at about a ninety-degree angle"; and that the Jarrett "vehicle approached with such suddenness I had no time to apply the brakes"; that the Pauley automobile "was in the right-hand lane of traffic, and the Jarrett vehicle simply drove across the curve and into my vehicle". Neva Pauley, wife of the defendant, testified that she and her three year old daughter were on the front seat of the Pauley vehicle; that she "was taking care of the child" and therefore did not see the Jarrett vehicle before the collision but that her husband, the defendant, "kept his side of the road as we were going in that direction."

Richard F. Jennings, a witness for the defendant, testified that he was a student at West Virginia University at the time of the accident and an industrial engineer at the time of the trial; that, immediately before the accident occurred, he, in his automobile, had followed the defendant's automobile about fifteen miles; that the defendant was traveling at a speed of about fifteen miles an hour immediately before the collision; that the Jarrett vehicle "failed to negotiate the curve" and consequently "it went across into the southbound

lane"; and that the Pauley vehicle never left its proper southbound lane.

Chester W. McClain, a deputy sheriff of Jackson County, investigated the accident shortly after it occurred. He testified that both vehicles came to rest after the collision in the southbound lane of traffic, partially on and partially off the highway. There is no dispute of the fact that, following the collision, both vehicles came to rest on the defendant's side of the highway.

Charles M. Jarrett, the driver of the automobile in which the plaintiffs were passengers, gave an account of the occurrence of the collision as follows: "* * * we dropped into this curve, and as I dropped into this curve, this Mr. Pauley was on my side of the road, coming dead at me. I had no other choice but to take this other side, which my car was two-thirds of the way off the highway when that car was hit." Mary Whittaker, one of the plaintiffs, testified that she was seated on the front seat of the Jarrett automobile; that Pauley, the defendant, was approaching on the wrong side or northbound lane of the highway, "coming right at us"; that, in these circumstances, Jarrett drove his vehicle into Pauley's lane in an effort to avoid a collision and that consequently the collision occurred in Pauley's traffic lane.

It appears, therefore, that there is a sharp conflict in the testimony concerning the cause of the collision of the two vehicles. The verdicts of the jury were approved by the trial court and, in the light of the conflicting testimony, we cannot say that the jury was unwarranted in returning verdicts against the defendant. *Fortner v. Napier*, 153 W.Va. 143, pt. 6 syl., 168 S.E.2d 737; *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 152 W.Va. 549, 165 S.E.2d 113; *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897; *Poe v. Pittman*, 150 W.Va. 179, pt. 6 syl., 144 S.E.2d 671.

Plaintiffs' Instruction No. 8 is as follows:

"The Court instructs the jury that even if they believe from the evidence that the driver of the

vehicle in which the Plaintiffs were riding was guilty of negligence and that that negligence may have contributed to their injuries, yet, if the jury further believes from the evidence that the negligent position of the driver of the vehicle in which the Plaintiffs were riding, was known, or should have been known, to the Defendant, B. G. Pauley, and that the injury to the Plaintiffs could have been prevented by the use of good care and diligence on the part of the said Defendant, B. G. Pauley, then the negligence of the driver of the vehicle in which the Plaintiffs were riding will not excuse or relieve the Defendant, B. G. Pauley, from liability."

The objection made to the granting of the instruction quoted above is that it was designed to be an instruction on the last clear chance doctrine, unsupported by the evidence, not in accordance with the plaintiffs' version or the defendant's version of the facts which resulted in the collision; and that the instruction was, therefore, misleading and unsupported by the evidence. We are of the opinion, however, that the giving of the instruction did not constitute prejudicial error, particularly in the light of Defendant's Instruction No. 10 which was granted and read to the jury as follows:

"The Court further instructs the jury that if you believe from the evidence in this case that prior to and at the time of the accident B. G. Pauley was not driving his automobile in a negligent manner and that the Jarrett automobile suddenly ran in front of the Pauley automobile at which time B. G. Pauley was driving his automobile along the highway in a lawful manner, and if you further believe from the evidence that B. G. Pauley could not by the exercise of reasonable care anticipate such action on the part of Charles M. Jarrett, the driver of the other automobile, or by the exercise of reasonable care avoid colliding with the automobile under the circumstances, then you should find the defendant B. G. Pauley not guilty and award the plaintiffs no damages."

If, when instructions are read as a whole, it is apparent that they could not have misled the jury, the verdict will not be disturbed, though a single instruction may be

susceptible of a doubtful construction when standing alone. *Ellison v. Wood & Bush Company,* 153 W.Va. 506, pt. 5 syl., 170 S.E.2d 321; *State Road Commission v. Bowling,* 152 W.Va. 688, pt. 3 syl., 166 S.E.2d 119; *Mitchell v. The Virginian Railway Company,* 116 W.Va. 739, pt. 2 syl., 183 S.E. 35.

The doctrine of harmless error is a firmly established principle by which we should be guided in the exercise of the appellate jurisdiction of this Court. *State Road Commission v. Bowling,* 152 W.Va. 688, pt. 2 syl., 166 S.E.2d 119.

Counsel for the defendant, by brief and oral argument, refers to the fact that the verdicts are obviously inadequate in their amounts when considered in the light of the evidence of damages sustained by the plaintiffs, the verdict of $118 in favor of Mary Whittaker representing merely the exact amount of her medical bills. Possibly the verdicts, being relatively small, should be treated as tantamount to verdicts for the defendant under principles restated by this Court recently in *Coakley v. Marple,* 152 W.Va. 68, pt. 1 syl., 156 S.E.2d 11, 159 S.E.2d 378. We prefer, however, to rely on the fact that the plaintiffs have not assigned error based on the inadequacy of the amounts of the verdicts. The defendant is not warranted in assigning error based merely on this ground.

We have carefully considered other assignments of error made in behalf of the appellant and are of the opinion that they constitute no basis for reversal of the judgment of the trial court. We are unable to perceive any prejudicial error in the trial of this case which would justify a reversal of the judgment of the trial court.

For reasons stated in this opinion, the judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*